J. Daniel Fink, J.
Plaintiff brings this action to recover the sum of $991.60 alleged to have been paid to the defendants under duress. The defendants have answered and the defendant Lewis M. Isaacs, Jr., moves for judgment on the pleadings pursuant to rule 112 of the Buies of Civil Practice, or in the alternative for summary judgment pursuant to rule 113.
In 1958, plaintiff was a statutory tenant of an apartment at 930 Fifth Avenue, Borough of Manhattan, City of New York. In that year a plan for co-operative ownership under the applicable provisions of section 55 of the State Rent and Eviction Regulations promulgated by the Temporary State Housing Rent Commission, as amended by Amendment No. 39, effective June 30,1955, was presented to all the tenants through the landlord’s agent, Brett, Wyckoff, Potter, Hamilton, Inc. The plan, as ultimately modified by negotiation, gave each tenant the exclusive right to purchase the stock allocated to his apartment at a price equal to 75% of the list price scheduled in the plan. The list price of plaintiff’s apartment was $19,832, 75% of which would be $14,874. The plan specified that the last date on which statutory tenants might exercise their exclusive right to buy at the reduced price was May 25,1959.
In March, 1959 three other statutory tenants commenced an action in the Supreme Court, New York County, for injunctive *444 relief and for a judgment to declare the co-operative plan and its method of promulgation illegal. The action went to trial in early April, 1959 and during the course of the trial a stipulation was executed by which the original plaintiffs’ time to exercise their exclusive right to purchase at the reduced price was extended to 30 days after a decision in the case was published in the New York Law Journal. The stipulation further provided that the other tenants, on complying with certain conditions, might join the action as plaintiffs and procure an equal extension of time to buy.
The trial lasted for about 12 weeks. In early May the plaintiff herein and other tenants moved for leave to join the Supreme Court action as parties plaintiff, claiming the right to do so by the terms of the stipulation. Defendants opposed this motion on the ground that the conditions of the stipulation had not been complied with. The motion was granted and an intermediate order entered thereon' on May 19, 1959, permitting plaintiff and other movants to join as parties plaintiff and similarly extending their time within which to purchase their apartments until 30 days after a decision was published in the New York Law Journal, from which order defendants promptly served a notice of appeal. The trial ended in the latter part of June and a decision dismissing the complaint and upholding the plan was published in the New York Law Journal on July 6, 1959 (see Greiner v. Gershman, 20 Misc 2d 697).
Within 30 days after the publication of the decision, plaintiff tendered the sum of $14,874, representing 75% of the list price of the stock allocated to his apartment; This tender was rejected and defendants demanded that plaintiff pay an additional 5% of the list price, amounting to $991.60, in default of which the apartment would not be transferred to him. Thereafter a stipulation was entered into which provided that plaintiff discontinued his action in the Supreme Court and waived any right to appeal in connection therewith as against the defendants therein, upon payment of $991.60 “ as costs and disbursements ’ ’, and it was further stipulated that the defendants also waived their right to appeal from the intermediate order.
It is this payment which plaintiff alleges was made by him under duress, and which he now seeks to recover.
The basis of the demand for the additional 5% is set forth on page 3 of plaintiff’s affidavit in opposition to the motion for summary judgment, in which he states: “ I was told by the defendants that they intended to prosecute the appeal from Judge Aurelio’s order and if they were successful on such appeal, my right to purchase my apartment would be lost *445 because the thirty day period would have expired by the time of the Appellate decision.” To further support his claim of duress, the plaintiff also avers that since he was “ afraid that the defendants would sell my apartment to another, I paid this additional sum by certified check ” and that “I feared that sponsor would sell my apartment to another and that such stranger might be able, as a bona fide purchaser, to evict me from my home under the Bent and Eviction Begulations ”. The plaintiff further recites ‘ ‘ I was convinced that they would go to any lengths to make me and the other tenant plaintiffs pay for so resisting them; that they had not taken the appeal in good faith, but only for the purpose of exerting pressure upon the tenants involved ”.
In summary, the foregoing represents the gist of plaintiff’s claim that the payment made by him was made under compulsion, and is thus recoverable.
It is to be noted that if the defendants had prevailed upon such appeal, the cut-off date would have been May 25, 1959, and not the 30-day period provided by Mr. Justice Aurelio’s order.
Thus it is clear from plaintiff’s own statement that the defendants’ threat was to resort to a legal remedy, viz.: the prosecution of the appeal from the order extending the plaintiff’s time within which to purchase the stock. Threats to resort to civil proceedings or to legal remedies do not constitute duress (Blumenfeld v. Harris, 3 A D 2d 219, 220; Dunham v. Griswold, 100 N. Y. 224, 226; 30 East End v. World Steel Prods. Corp., 110 N. Y. S. 2d 754, 757; and cases therein cited). The plaintiff’s contention that the defendants had not taken the appeal in good faith, is not supported by the record, since the very order of May 19, 1959, upon which plaintiff relies, gave all the parties the right to appeal. There is no evidentiary recital by plaintiff that the notice of appeal was filed maliciously and without probable cause. “ In order, however, that litigation may be legally termed vexatious it must be shown that it is instituted maliciously and without probable cause ” (Paramount Pictures v. Blumenthal, 256 App. Div. 756, 760).
Under the facts here present, if plaintiff actually believed that the appeal was not taken in good faith, there was an immediate remedy available to him (see Brewster Aeronautical Corp. v. Fener, 196 Misc. 208; Matter of Herlands [Carchietta], 204 Misc. 369, 371; Paramount Pictures v. Blumenthal, supra, p. 759).
At the time plaintiff signed the stipulation, he knew of the pending appeal, and that a reversal would preclude him from making any purchase at all. Unquestionably, plaintiff feared *446 the loss of his apartment, but this fear was engendered by his uncertainty as to the outcome of the pending appeal. He speculated and speculated perhaps unsuccessfully upon the comparative advantage or disadvantage of awaiting the outcome of the appeal. The hope of gaining was balanced against the risk of losing. By the settlement he secured for himself advantages which he now seeks to retain at the expense of the defendants (cf. Sylvan Mtge. Co. v. Stadler, 115 Misc. 311).
A chronology here becomes important. The court observes that the stipulation requiring the plaintiff to pay the sum of $991.60 was signed on July 13,1959. The summons and verified complaint herein were not served until July 26, 1960, a year after the stipulation was signed. It appears without dispute that at the time the stipulation was executed, plaintiff was represented by an attorney. From that time until the commencement of this action, the present posture of the application fails to indicate that plaintiff voiced any objection to the circumstances leading up to the execution of the stipulation.
Assuming, as plaintiff alleges, that his payment was made under duress, it was, at the time, not void, but merely voidable, and subject to .ratification subsequently (Hudson Riv. Yards Corp. v. Tillotson, 144 N. Y. S. 2d 183,185; 17 N. Y. Jur., Duress and Undue Influence, § 26, p. 235). Such ratification results if the party entering into the contract under duress accepts the benefits growing out of it or remains silent or acquiescés in the contract for any considerable length of time after opportunity is afforded to avoid it or have it annulled (Gallon v. Lloyd Thomas Co., 264 F. 2d 821, 826). Thus one who would repudiate a contract procured by duress must act promptly, or he will be deemed to have elected to affirm it (Port Chester Elec. Constr. Corp. v. Hastings Terraces, 284 App. Div. 966, 967; Papert v. Conway, 107 N. Y. S. 2d 638, 640).
Upon the basis of the foregoing authorities, it is apparent that by his laches the plaintiff may be deemed to have ratified his agreement.
What constitutes duress is a matter of law; whether duress exists in the particular transaction is usually a matter of fact (17A Am. Jur., Duress and Undue Influence, § 32, p. 598). To warrant the conclusion that there was any duress here ‘ ‘ there must be some evidence of compulsion, actual, present or potential.” Plaintiff’s fear of losing the appeal does not alter the voluntary character of his act. “ The facts are not disputed, and the question whether admitting them all they amounted to duress was a pure question of law upon which the court was *447 authorized to pass ” (Glicman v. Barker Painting Co., 227 App. Div. 585, 587).
Plaintiff further argues that the defendants had no right to exact from him more than the statutory costs, and that, accordingly, he is entitled to recover such sum, upon the authority of One Hundred & Thirty-Fourth St. Co. v. Wells (80 Misc 215). Although by the terms of the stipulation the payment to be made by plaintiff was designated as “ costs and disbursements ”, the plaintiff well knew and the record amply sustains the conclusion that the sum computed amounted to exactly 80% of the list price of the apartment, the basis of the original dispute between the parties (Greiner v. Gershman, supra, p. 700). Regardless of nomenclature, the plaintiff agreed to pay a sum sufficient to buy Ms peace, by requiring the defendants to waive their right of appeal, which they did.
In this light, the plaintiff could be constrained to pay any amount as a consent to the defendants’ waiver and discontinuance of the appeal (One Hundred & Thirty-Fourth St. Co. v. Wells, supra, p. 217; cf. Sylvan Mtge. Co. v. Stadler, supra).
A state of mind, such as fear, can never be the subject of a contradiction because it rests upon the subjective opinion of the person who asserts it (Matter of White, 182 Misc. 223, 229). By the terms of the order appealed from, the plaintiff’s time within which to purchase his apartment had been extended until 30 days after the publication of the decision in the New York Law Journal. There is no question that the plaintiff had made his tender before such expiration date. It follows necessarily that at the time he made his tender, he had nothing to fear, since he had duly complied with the terms of the order which had extended the cut-off date for the purchase of his apartment. Obviously, his fear resulted from the apprehension that the order according this privilege to him might he reversed. If the order was affirmed he could remain in possession. If the order was reversed, he would completely lose his right to purchase the apartment since either cut-off date would not then he available to him.
Accordingly, it is found that no triable issue of fact is presented, and that as a matter of law, the plaintiff was not subjected to duress.
The moving defendant’s motion for summary judgment is granted, the complaint is dismissed, with costs, and the Clerk is directed to enter judgment accordingly. In view of this disposition, consideration of that branch of the moving defendant’s motion for judgment on the pleadings becomes unnecessary.