*701 OPINION OF THE COURT
Edward J. McLaughlin, J.
This case comes before the court on an order to show cause filed with the court by petitioner, demanding to know why her child, Robert Revette, should not be returned to her by the respondent, Commissioner of Social Services of Onondaga County.
The facts of the case, as found by the court, are that on January 18, 1975, petitioner gave birth to a child, Robert. The father of the child is unknown. On January 27, 1975, petitioner asked for help with her child, and the care and custody of the child was voluntarily transferred to the respondent. In his turn, respondent selected a Catholic Social Services foster home for the child. On February 26, 1975, a petition for approval of foster care was filed by respondent with the Family Court of Onondaga County, pursuant to section 358-a of the Social Services Law. An order of disposition was signed approving the foster care by the Honorable Raymond J. Barth on May 7,1975.
Until recently, petitioner has been a resident of Marcy State Hospital. Petitioner was admitted to Marcy when she was 12 years old. No adverse findings were made by this court as to the petitioner’s present state of mental health. While her mental capacity is not at issue, the court notes that all evidence indicates that the petitioner has difficulty in organizing her daily life. In 1975, after the voluntary transfer of the care and custody of the child, the petitioner made numerous informal requests to Catholic Social Services for the return of the child. These requests were denied on the grounds that the petitioner did not satisfactorily demonstrate to the commissioner that she was able to care for the child. Numerous caseworkers were assigned to petitioner to help her to meet the commissioner’s requirements. The petitioner was advised from time to time by many of the commissioner’s representatives as to the steps she must take to remove his objections. Petitioner finally, with the help of an attorney, formally requested the return of her child. On December 16, 1975, a letter was sent by the commissioner to the petitioner, which formally enunciated the conditions which had previously been orally outlined to the petitioner by her caseworkers. The letter stated that formal neglect proceedings would be initiated if the petitioner did not demonstrate to the respondent that she was able to take care of the child. Petitioner was told that the conditions must be met by January of 1976.
*702 Significantly, neither the agreement for voluntary placement of the child in foster care signed by the petitioner on January 27, 1975, nor the petition for approval of foster care filed by respondent on February 26, 1975, spelled out the specific conditions or the date upon which the child would be returned. Accordingly, the order of disposition signed on May 7, 1976, did not specify any terms or conditions for return.
Throughout January and early February of 1976, the child, Robert, remained in foster care, and petitioner continued to work with respondent’s caseworkers. Then, on February 18, 1976, petitioner went to the office of her caseworker, although she had no scheduled appointment. She asked to sign, and at that time did execute, a document which permanently transferred the custody and guardianship of the child, Robert, for the purpose of adoption, to respondent. (Social Services Law, § 384.) Both the social worker and the notary public who witnessed the execution of the document informed petitioner of the permanency of her action, of the fact that the custody of her child would be transferred, and that, while she had 30 days in which to change her mind, after 30 days she could not change her mind. (Social Services Law, § 384, subd 5.) Petitioner was not instructed as to what steps she should take to inform the respondent of her intention to revoke.
Unfortunately, the respondent failed to petition for approval of the surrender, as he is admonished to do pursuant to subdivision (1) of section 358-a of the Social Services Law. However, the failure to petition does not affect the validity of the surrender. (Social Services Law, § 384, subd 4.) Had the respondent accepted this admonition, this entire proceeding could have been avoided.
Shortly after petitioner signed the surrender document she began to informally contact a variety of people and services about the event. She spoke with, on the telephone, and wrote to a psychologist she had known through Catholic Social Services within hours of the surrender. The psychologist did not interpret her concern about signing the surrender document as a request to revoke the document. Petitioner signed herself into Marcy shortly after the surrender, where she remained for a few days. When she signed herself out of Marcy, she unsuccessfully attempted to get legal services. Most significantly, at no time did she call, write, or go to see the social worker who had accepted the surrender of the child; nor did she write to the respondent notifying him of her *703 change of mind. The child was subsequently placed in the home of adoptive parents.
Petitioner contends that she was under great emotional strain at the time she signed the surrender document, and that it was signed under duress and coercion. The motion to show cause was filed by petitioner on November 3, 1976, by her court-appointed attorney. On November 4, 1976, the respondent was ordered to show cause why the court should not return the child to the petitioner. (Social Services Law, § 358-a, subd [7].) The matter came to trial on January 6, 1977.
The pertinent statute, section 384 of the Social Services Law, prescribes the manner in which the guardianship of a child may be committed to an authorized agency by a written instrument known as a surrender. The statute also provides that "where the child has been placed in the home of adoptive parents and more than thirty days have elapsed since the execution of the surrender” an action or proceeding for the return of the child is barred, unless the surrender of the child was obtained by fraud, duress, or coercion. (Social Services Law, § 384, subd 5.)
In her papers and at trial, petitioner placed great emphasis upon the duress and coercion of the respondent in inducing her to sign the document. She points with particularity to the conditions imposed upon her by the respondent, conditions placed upon her for the child’s best interest, which she was required to meet before the child could be returned to her from temporary foster care. She also points to the "threat” of a neglect proceeding.
In a situation where there is no actual force, but where "it is claimed that a promise was obtained by duress per minas, then whether or not the promise was obtained by duress must usually be a question of fact, and the question cannot be determined as one of law. It is not sufficient in such cases to satisfy the trial court that the threats were uttered; but it must also be shown that they constrained the will of the promisor and induced the promise.” (Dunham v Griswold, 100 NY 224, 226-227.) The facts of this case, as found by this court, show that numerous representatives of the respondent continuously informed the petitioner of what must be done so that the child, Robert, would be returned to her, not what must be done so that the child could be surrendered to him. Petitioner was notified formally as well as informally of what needed to be done to protect the best interests of the child.
*704 Her will was not constrained. This court finds no evidence of duress or coercion in the execution or inducement of the surrender document. (Social Services Law, § 384, subd 5.)
The capacity of the petitioner to execute, the surrender document is unquestioned. (See, e.g., Matter of Buttonow, 23 NY2d 385, 394.) Whether a transfer of custody is voluntary or involuntary is always an issue of fact. (People ex rel. Scarpetta v Spence-Chapin Adoptive Serv., 28 NY2d 185, 191, cert den 404 US 805.) Petitioner went to respondent’s social worker at her office and asked to execute a surrender document. She was told what the document would mean to her as it pertained to the custody and guardianship of her child. This court finds that petitioner voluntarily committed her child to an authorized agency by means of a duly executed and acknowledged surrender document.
Further, petitioner did not give respondent proper notice that she wished to revoke her consent. In Scarpetta (supra), the mother immediately notified the adoptive agency orally and in writing that she wished to revoke her consent. In that case the agency formally denied her request. Here, petitioner made no formal efforts to revoke her written surrender of the custody of her child to respondent, within the 30-day period allowed.
It is, therefore, the holding of this court that in order to put an authorized agency on notice that the surrendering party wishes to revoke the surrender of guardianship and custody for purposes of adoption pursuant to subdivision 5 of section 384 of the Social Services Law, the authorized agency must be notified in a manner sufficiently formal, so as to put the agency on notice, so that they may take the appropriate action to protect the ultimate adoption. We appreciate that we are dealing here with a highly emotional situation where surrendering parents frequently are burdened with physical, financial or mental disabilities. The requirements for revocation should not be so formal as to become, as a practical matter, impossible or unduly difficult to satisfy. Accordingly, we hold that the minimum prerequisite to effectuate a revocation would be personal, oral notice to the employee of the agency who actually accepted the surrender. In the alternative, written notice of the intention to revoke in unequivocal terms communicated to the head of the authorized agency by certified mail would also be sufficient. We stress that these are minimum standards and are far from the ideal, and fall short *705 of the notice required for commencement of legal action for the return of the child. However, given the equities of such a situation, this minimal notice would be sufficient to direct the authorized agency to notify the court of the request pursuant to section 112 (subd 3, par [4]) of the Domestic Relations Law.
The far better policy would be for each authorized agency to advise the surrendering party, at the time of the surrender, of the means by which they would prefer to be notified in case of a revocation, and that these means be made known to the surrendering party in clear and unequivocal language.
The document permanently transferring the custody and guardianship of the child, Robert, for the purpose of adoption to respondent, Commissioner of Social Services of Onondaga County by petitioner, is a valid transfer. It was duly executed, voluntarily, without coercion or duress; nor did petitioner demonstrate that the best interests of the child dictate a return. (People ex rel. Doe v Edwards, 31 AD2d 64, affd 23 NY2d 925.) The child has been placed in the home of adoptive parents and more than 30 days had elapsed since the execution of surrender. (Social Services Law, § 384, subd 5.) No action or proceeding for the custody of the surrendered child or to revoke or annul petitioner’s surrender of the child, Robert, can be maintained.
Petitioner further claims that she was denied the right to counsel in the execution of the surrender document. The claim has no merit. By statute, counsel is required under section 384 of the Social Services Law only in a situation where a petition is brought against a person whose consent is required for the transfer of custody and guardianship alleging that the parent cannot care for the child by reason of mental illness. (Social Services Law, § 384, subd 7, par [a].) Such a situation did not arise in petitioner’s case.
Accordingly, petition for the revocation of the surrender of the subject child, for purposes of adoption, and return of the child should be dismissed.