**CITIBANK, N. A., Plaintiff,**

v.

**GRAPHIC SCANNING CORP. and Graphnet Systems, Inc., Defendants.**

**78 Civ. 3384 (KTD).**

United States District Court, S. D. New York.

Oct. 25, 1978.

338

Shearman & Sterling, New York City, for plaintiff; Clarence W. Olmstead, Jr., Andrew S. O'Connor, New York City, of counsel.

Jaffe & Asher, New York City, for defendants; Peter A. Jaffe, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

Plaintiff, Citibank N. A. [hereinafter referred to as "Citibank"], brings this action against Graphic Scanning Corp. [hereinafter referred to as "GSC"] and Graphnet Systems, Inc. [hereinafter referred to as "Graphnet"] pursuant to § 207 of the Communications Act, 47 U.S.C. § 207. Jurisdiction is founded upon 28 U.S.C. § 1331 as

well as upon the principles of pendent jurisdiction.

Defendant GSC is a corporation which provides specialized data and message processing services such as indexing, storage and retrieval.

Defendant Graphnet, a subsidiary of GSC, is a communications common carrier authorized and regulated by the Federal Communications Commission providing message delivery services.

Plaintiff's first claim charges that both GSC and Graphnet, while rendering their respective communication related services to Citibank, violated numerous provisions of Title II of the Communications Act as well as section 64.702 of the Federal Communication Commission's [hereinafter referred to as "FCC"], Regulations promulgated thereunder. More particularly plaintiff charges that:

(a) in violation of Section 64.702(c)(1) of the FCC Regulations, Graphnet and Graphic Scanning have not maintained separate accounts or utilized separate personnel, facilities and equipment;

(b) in violation of Section 64.702(d) of the FCC Regulations, Graphnet has made available to Graphic Scanning computer capacity which Graphnet uses for the provision of its common carrier services;

(c) in violation of Section 64.702(c)(2) of the FCC Regulations, Graphnet has not filed with the FCC notification of the existence and terms of oral or written contracts, agreements or arrangements between it and Graphic Scanning;

(d) in violation of Section 64.702(f) of the FCC Regulations, Graphnet has not filed with the FCC a complete description of its communications offering for the implementation of Graphic Scanning's service and a supporting statement demonstrating that Graphic Scanning offers a hybrid data processing service;

(e) in violation of Section 64.702(c)(3) of the FCC Regulations, Graphnet and Graphic Scanning have engaged in promotional activities on behalf of one another;

(f) in violation of Title II of the Act and Section 64.702 of the FCC Regulations, Graphic Scanning has provided to Citibank message-switching services or hybrid communications services and not data processing services, although it is not authorized to act as a common carrier; in the alternative, Graphnet has exceeded its operating authorization and acted in nonconformity with its tariff by virtue of Graphic Scanning's communications or hybrid communications services to Citibank; and

(g) in violation of Sections 201(b), 202 and 203 of the Act, Graphnet has not charged Citibank in accordance with its published tariff rates.

Plaintiff's second claim charges that both GSC and Graphnet threatened to terminate all services rendered to Citibank unless Citibank entered into a written agreement with GSC. An agreement was subsequently executed by Citibank and GSC on December 10, 1978. Plaintiff alleges that the contract was executed under duress and thereby void as a matter of law.

Plaintiff contends that as a result of the alleged violations of the Communications Act and the duress exerted in relation to the agreement of December 10th, they are entitled to recover all monies paid to GSC pursuant to the agreement.

Defendants have moved, pursuant to Rules 12(b) and 56 of the Federal Rules of Civil Procedure, to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted or, in the alternative, for summary judgment on both claims.

Citibank began this action on July 25, 1978. Defendant GSC, however, brought a prior related action on July 11, 1978 in Supreme Court, New York County.[1] In that action GSC alleged that since 1973, pursuant to an oral agreement, it began to develop an automated data and message processing system whereby Citibank could

1. Indeed, defendants contend that the instant action was instituted merely in an attempt to intimidate GSC from proceeding with the state court action.

deliver and receive its messages through Graphnet, as a common carrier, directly in the offices of Citibank and thereby avoid the use of messenger services. Thereafter, the parties entered into a written agreement, dated December 10, 1976, reciting in large part their prior oral agreement and further providing that where permissible all messages processed by GSC for Citibank would be delivered by its subsidiary Graphnet. The fee of Graphnet for acting as a common carrier was to be in accordance with Graphnet's tariffs as filed with the FCC. Citibank was to pay GSC a standard message processing fee per message together with an incremental fee per message to reimburse GSC for its work in developing the processing system. It was over these fees that the state court action arose.

It is apparent that in the state court action neither the fees of Graphnet nor GSC were in dispute. Rather, Citibank asserted two defenses to enforcement of the December agreement and any fees to be paid thereunder. The first defense charged that Citibank entered into the agreement under duress and it was thereby void as a matter of law. Citibank's second defense charged that Graphnet and its parent GSC violated various provisions of the Communications Act in providing data processing and messenger services to Citibank. Accordingly, they argued that GSC should be precluded from recovering any monies as a result of these illegal activities.

It is evident that plaintiff's two claims in the instant action are identical to the two defenses raised in the state court action. Citibank has simply taken its affirmative defenses from the state court action and converted them into federal claims in the present action. Indeed, the only difference between the two actions is that while only GSC brought suit against Citibank in the state court action, Citibank has joined both GSC and Graphnet as co-defendants in the instant action.

GSC moved in the state court action for summary judgment. Justice Martin Evans,

in an opinion dated October 4, 1978, granted GSC's motion and dismissed both Citibank defenses.[2]

Concerning the alleged violations of the Communications Act, and section 64.702 of the FCC Regulations, Justice Evans found that GSC was simply not a common carrier subject to the Communications Act or the FCC Regulations promulgated thereunder. There being no nexus between GSC and the Act, any alleged violation thereof was a legal impossibility and the defense was thereby dismissed.

Similarly, as to the circumstances surrounding the December 10th agreement between GSC and Citibank, Justice Evans found no evidence of duress. Moreover, he stated that the agreement did not appear to be unconscionable. Thus, this defense also fell.

In disposing of defendants' motion I must initially determine what, if any, collateral estoppel or *res judicata* effect should be given Justice Evans' decision of October 4th.

 The doctrine of *res judicata* provides that where a final judgment has been rendered on the merits, it acts as an absolute bar to a subsequent action, between the same parties or those in privity with them, based upon the same claim. *See* 5 Weinstein-Korn-Miller New York Civil Practice ¶ 5011.07 at 50–72 (1977). Its applicability to the case at bar is apparent. As previously noted, the defenses raised by Citibank in the state court action are identical to the claims it asserts in the case at bar. Moreover, it is clear that the granting of a motion for summary judgment is a final determination on the merits. *Id.* ¶ 5011.11 at 50–85. Accordingly, under the doctrine of *res judicata*, Justice Evans' decision acts to bar both Citibank claims in the instant action, at least as to defendant GSC.

 Since defendant Graphnet, however, was neither a party nor in privity therewith in the state court action, the doc-

---

**2.** Justice Evans also denied Citibank's cross motion in that action, to stay the state court proceeding while it proceeded "for essentially the same relief in the District Court."

trine of *res judicata* is not available to it. It may, however, seek partial refuge in the doctrine of collateral estoppel which provides that a party is precluded from re-litigating any issue that has been finally and necessarily decided against that party in an earlier action. The fact that Graphnet was not a party to the prior action does not preclude application of the doctrine. It is now settled that where the party being estopped had a full and fair opportunity to litigate the issue in question, the party seeking to estop the re-litigation need not have been a party in the original action. *See, e. g., Schwartz v. Public Admin. of Co. of Bronx,* 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969); *Vincent v. Thompson,* 79 Misc.2d 1029, 361 N.Y.S.2d 282 (Sup. Ct.1974). There is no doubt that Citibank had a full and fair opportunity to litigate the issues in the state court action. Thus, the doctrine is clearly available to defendant Graphnet in the case at bar as to those issues finally and necessarily decided in the state court action.

■ Concerning the alleged duress exerted by Graphnet, it is clear that Citibank is bound by Justice Evans' decision that the agreement was not entered into under duress. Indeed, this was the very issue decided by Justice Evans. Thus, plaintiff is estopped from re-litigating that issue in the instant action.[3]

■ Citibank's claim that Graphnet violated the Communications Act, however, presents a different situation. While Justice Evans held that GSC was not subject to the Communications Act, and thus, not liable thereunder as a matter of law, he expressly reserved decision as to whether Citibank could recover any monies from Graphnet, a common carrier, as a result of Graphnet's allegedly charging Citibank in violation of its tariff rates registered with the FCC. Complaint at ¶ 10(g). Also impliedly reserved in his decision was whether Graphnet alone violated any provisions of the Act or the Regulations thereunder. Accordingly, these issues alone are not precluded in any way by virtue of the prior state court decision.

■ It is evident that where an issue concerning the rates charged by a common carrier is presented, as with the other alleged violations of the Communications Act, an administrative determination by the FCC is available pursuant to 47 U.S.C. §§ 207–09. Moreover, the right of judicial review thereafter is provided by 47 U.S.C. § 402.

Since the sole question before me involves matters better left initially to the expertise of the FCC, I dismiss this claim, without prejudice, in order that Citibank first pursue its administrative remedies.[4] *Booth v. American Telephone & Telegraph Co.,* 253 F.2d 57, 58 (7th Cir. 1958).

Accordingly, defendant GSC's motion for summary judgment is granted in all respects; defendant Graphnet's motion for summary judgment is granted in all respects except as to Citibank's claim concerning alleged violations by Graphnet of the Communication Act and Regulations promulgated thereunder, which portion is dismissed without prejudice to plaintiff in seeking an administrative determination thereof.

Settle judgment on five days' notice.

---

3. There is no doubt that the December 10th agreement was only between Citibank and GSC. The defendant Graphnet was simply not a party to the agreement. Accordingly, even if Citibank were not precluded from re-litigating the issue of duress, the claim appears to be deficient as a matter of law. The alleged threats of a stranger to a contract, here Graphnet, have been held to be insufficient to support a claim of duress between contracting parties, here Citibank and GSC. *See, e. g., W. R. Grimshaw Co. v. Nevil C. Withrow Co.,* 248 F.2d 896, 905 (8th Cir. 1957).

4. I have serious doubts as to whether the plaintiff Citibank has standing to raise many of the asserted violations of the Communications Act either in this Court or before the FCC. *See Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

I will not rule on that question, however, since it is a matter to be dealt with primarily by the FCC in an administrative action.