■ JULIA UMSCHEID, Appellant, v MATILDA SIMNACHER, Respondent. — In a proceeding pursuant to article 77 of the Mental Hygiene Law, the petitioner conservator of the respondent's estate appeals from an order of the Supreme Court, Dutchess County (Dachenhausen, J.), dated November 3, 1983, which, *inter alia,* (1) denied the petitioner's application for reimbursement for expenses incurred in the amount of $46,973; and (2) in effect, removed the petitioner as conservator.

Order affirmed, without costs or disbursements.

By order dated October 21, 1982, Julia Umscheid, the petitioner, was appointed conservator of the "income and assets" of Matilda Simnacher, the respondent, pursuant to article 77 of the Mental Hygiene Law. The court also ordered, as is here relevant, "that the compensation of the conservator shall be the same as the compensation allowed by the committee of the property appointed pursuant to Article 78 of the Mental Hygiene Law, which compensation has not been waived in whole or in part by the conservator". A hearing was conducted, after which the court, by order dated November 3, 1983, *inter alia,* denied in all respects the petitioner's application for reimbursement in the amount of $46,973, and, *sua sponte,* in effect, removed the petitioner as conservator.

On this appeal, the petitioner contends that she should be reimbursed for the domestic services she rendered to the respondent from 1973 until May, 1980. The petitioner predicates her contention on two documents which, she alleges, were signed by the respondent. The first, a handwritten letter dated November 6, 1979, states: "Julia Umscheid has helped me since my husband died. Julia is a good friend to me. She takes good care of my animals. Without her help I would be a mess. She gave me many hours of happiness. She did everything so I could live in my home which meant everything for me. I want Julia to be paid for her services when I sell a piece of property."

The second document, which purports to be a power of attorney given by the respondent to the petitioner on June 9, 1980, states that, "I, MATILDA SIMNACHER, have this day given full and complete power of attorney to my dear friend, Julia Umscheid. I make this memorandum not to limit the power of attorney in any way, but to make it clear that I want Julia Umscheid to sell my real property in Pawling. I also want to reimburse Julia Umscheid for all the things she paid for me, taxes, oil, groceries and so on. I also want to pay Julia Umscheid for coming up to my house and looking after me, my property, and my animals."

The law is well settled that

"in order for a promise to be enforceable as a contract, the promise must be supported by valid consideration * * * The essence of consideration is a legal detriment that has been bargained for and exchanged for the promise. In short, the detriment must induce the promise * * *

"The general rule is that past consideration is not consideration * * * A promise supported by past consideration is unenforceable because the detriment did not induce the promise. That is, 'since the detriment had already been incurred, it cannot be said to have been bargained for in exchange for the promise'" (*Citibank v London,* 526 F Supp 793, 803).

New York law, however, provides otherwise under certain circumstances. Section 5-1105 of the General Obligations Law states that "[a] promise in writing and signed by the promisor or by his agent shall not be denied effect as a valid contractual obligation on the ground that consideration for the promise is past or executed, if the consideration is expressed in the writing and is proved to have been given or performed and would be a valid consideration but for the time when it was given or performed."

To be enforceable pursuant to section 5-1105 of the General Obligations Law, the writing must contain an unequivocal promise to pay a sum certain, at a date certain, and must express consideration for the promise (*Sarama v John Mee, Inc.,* 102 Misc 2d 132, 133; *Citibank v London, supra,* p 803).

In our view, the writings relied upon by the petitioner do not contain an unequivocal promise to pay a sum certain at a date certain. Moreover, the consideration was not "expressed" within the meaning of section 5-1105. The consideration alluded to in the documents, viz., services rendered on the respondent's behalf, is vague, imprecise, and, indeed, is without meaning. In short, resort to evidence extrinsic to the documents is necessary to give meaning to the consideration "expressed" in those documents (see *Persico Oil Co. v Levy,* 64 Misc 2d 1091, 1092).

Finally, in connection with the enforceability of the two documents, Special Term found as follows at the conclusion of the hearing: "As a result of the testimony taken by the Court and as a result of all the evidence that is before the Court, the Court finds that Matilda Simnacher did not have the requisite mental capacity to execute the power of attorney on June 9, 1980, and that the memorandum on the same date which indicates her desire to see to it that Mrs. Umscheid be paid is affected by the same lack of requisite mental capacity. The foundation or basis for this is the testimony of the two physicians who had contact with her during this period of time, Dr. Morrison and Dr. Clark, that Matilda Simnacher did not understand the quality and nature of the power of attorney or for that matter the memorandum which she signed at Julia Umscheid's home * * * I now find that she was mentally suffering from organic brain syndrome or senile dementia. They are what I understand to be interchangeable terms and that in fact she was disoriented, didn't know where she was, not rational, etc."

The court added: "That I choose to believe the testimony of the physicians who might claim to be essentially disinterested in this matter over that of Mrs. Umscheid [and her witnesses] all of whom have indeed an interest in this matter in one form or another where their testimony would be colored. So from my observation of the witnesses and the way that they testified before this Court, I am indicating that without any doubt the issue of credibility is resolved in favor of the physicians, Drs. Clark and Morrison, who testified about the lack of requisite mental capacity on the part of Matilda Simnacher beginning at a time at least one month before any of these documents were signed."

Quite obviously, questions pertaining to credibility are best left to the trier of fact (see *Matter of Lewinson v Crews,* 28 AD2d 111, 113, affd 21 NY2d 898), and we find no basis in the record for concluding that the witnesses credited by the court were unworthy of belief (see *People v Garafolo,* 44 AD2d 86, 88). To the contrary, we find ample basis in the record to support Special Term's conclusion that the respondent lacked the requisite mental capacity to enter into and execute an enforceable contract.

Nor may the petitioner recover under a *quantum meruit* theory. Recovery under this theory "rests on a narrow exception to the rule that a party may not expect compensation for a benefit conferred gratuitously upon another" (*Trott v Dean Witter & Co.,* 438 F Supp 842, 844, affd 578 F2d 1370). To recover on this ground, the *quantum meruit* claimant must prove by convincing and satisfactory evidence (1) the performance of the

services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefor; and (4) the reasonable value of the services (see *Matter of Adams,* 1 AD2d 259, affd 2 NY2d 796; *Matter of Allen,* 53 Misc 2d 1032, 1033).

In the case at bar, the respondent, an elderly woman, freely and gratefully accepted the services rendered in her behalf by the petitioner, an old friend of hers. The petitioner's uncontroverted allegation that "I have spent my entire life as a housekeeper and practical nurse and have been paid for my services", supports the conclusion that the petitioner reasonably expected to be compensated for services rendered to the respondent. However, the petitioner's statement in her verified petition that she "is the closest friend of Matilda Simnacher" supports the conclusion that the services were rendered out of affection and without an expectation of compensation (see *Matter of Adams,* 1 AD2d 259, 262, *supra; Peters v Morse,* 96 AD2d 662, 662-663). As much was suggested by the court when it rhetorically asked, "these two women were friends from back in 1930 or thereabouts when they first met in New Rochelle, and if indeed this was such an old friendship, then isn't what Mrs. Umscheid did insofar as spending time is concerned and care, isn't that what old friends do for each other?"

Also significant is the absence of any proof in the record that a bill for services rendered was ever presented to the respondent, thereby suggesting that the services were gratuitously rendered and that an implied contract was an afterthought (cf. *Peters v Morse, supra,* p 663).

We also disagree with the petitioner's contention that Special Term abused its discretion when it, in effect, removed her as conservator pursuant to section 77.33 of the Mental Hygiene Law. Based on the evidence adduced at the hearing, the court found that the petitioner had not acted in the respondent's best interest when she sold the respondent's property at a price "well below the fair market value" and then reimbursed herself out of the proceeds in the sum of $21,577.50 for expenses she claimed were incurred in the respondent's behalf, many of which expenses were not documented. Under these circumstances, the court justifiably concluded that "whether through ignorance or just plain neglect", the petitioner had breached her fiduciary duty to the respondent.

We have reviewed the petitioner's remaining contentions and find them to be without merit. Mollen, P. J., Titone, Bracken and Rubin, JJ., concur.