OPINION OF THE COURT
Leonard Silverman, J.
The amended claim in this action was filed with permission of the court. The amended claim contains 50 causes of action. Each cause of action seeks payment for the towing and storage of an abandoned vehicle from the New York State Thruway at the direction of the defendant.
On January 1, 1990 claimant was a garage authorized by defendant to provide towing and emergency repair services from an assigned section of the Thruway. An original authorization pertained to trucks. Subsequently it became authorized to service cars. The letters of authorization established procedures and requirements for claimant when called by defendant to service disabled vehicles on the Thruway. An addendum to the letters provides additional duties and includes a schedule of rates for towing and rental rates for equipment.
It is clear from these documents that claimant was obligated to provide services as directed by Thruway personnel or agents. One paragraph specifically requires claimant to cooperate with the Authority and police personnel at all times in clearing the roadside. Defendant had the power to revoke its authorization at any time without cause.
It is undisputed that claimant was summoned by defendant on 50 separate occasions between January 10, 1990 and December 19, 1990 to tow vehicles from the Thruway. The vehicles were abandoned and thereafter not claimed by the registered owners. On those occasions when claimant provided repair, towing and/or storage for vehicles that were claimed by the owner, the owner paid for the services rendered. If the vehicle was unclaimed and the value was in excess of $750, the evidence indicated that defendant would take the car after paying the towing and storage fees. In the 50 instances which are the subject of this action claimant was never paid for *4 towing or storage of the vehicles since the vehicles were never claimed by the last registered owner or taken by defendant.
In each instance the defendant knew that claimant was in possession of the unclaimed vehicles. In some instances defendant was obligated by statute (Vehicle and Traffic Law § 1224 [3]) and regulation (15 NYCRR part 18) to notify the last registered owner that it recovered the vehicle and was going to dispose of the vehicle. While defendant fulfilled this obligation claimant stored the vehicle on its premises. In other instances claimant retained possession while defendant processed the necessary paperwork to transfer title of the vehicle to claimant. In each instance the vehicle was never claimed. Because each vehicle was valued at less than $750, title and a salvage certificate were given to claimant.
Claimant was obligated to store the vehicles which are the subject of this claim for as few as 12 days or as many as 171 days before he received title to the cars. The average storage period was approximately 77 days. The authorized storage charge was $15 per day. The damages sought in each cause of action, with one or two exceptions, clearly exceed the value of the vehicle.
Defendant argues that this claim must be dismissed since claimant failed to establish an implied or quasi contract. Defendant argues that claimant performed the services in question for almost a year and never sought payment. Defendant also relies upon the fact that none of the other authorized tow operators are compensated for their services under these circumstances and claimant knew it would not be paid for this work.
Prior to claimant’s demand for payment the parties never had any written or oral communications regarding the towing and/or storage charges attributable to those vehicles claimant towed from defendant’s property at defendant’s direction. There was no express contract. However, an implied contract may arise as an inference from facts and circumstances even though it is not formally stated in words (Jemzura v Jemzura, 36 NY2d 496). An implied contract rests upon the conduct of the parties. In evaluating the conduct we must determine whether a reasonable person would think a contract was intended.
Generally when a party requests the performance of services from another and the other performs those services the law implies a promise by the party to pay for those services (Homemakers, Inc. v Williams, 100 AD2d 505). The Thruway Authority would have us believe they are an excep *5 tion to this proposition. Defendant suggests that the authorized tow operators are so grateful for being allowed on the Thruway to service those vehicles whose owners pay for services rendered that they will work for the Thruway Authority for nothing. Nobody can expect to gratuitously receive services from a business on an ongoing basis. There is no evidence that claimant performed these services voluntarily.
Claimant provided services in good faith. The defendant accepted the benefits of claimant’s services and the services had a value. The only question is whether claimant had an expectation of compensation (Umscheid v Simnacher, 106 AD2d 380). We do not believe claimant would render towing and storage services without an expectation of compensation. That is not the way a business operates. When a vehicle was claimed by its owner or the defendant took the vehicle, claimant was paid. Claimant would not know at the time it answered a call for towing whether the owner or defendant would take a vehicle or whether defendant would give claimant title to the vehicle. In all of these options, however, claimant expected compensation in one form or another.
The documentary evidence and the relative statutes also indicate that claimant had a right to expect compensation for the services rendered and defendant was expected to pay for those services if the last registered owner failed to do so. Defendant’s own documents support this conclusion and contradict the testimony of defendant’s employees regarding the intent of the parties.
The letter authorizing claimant to provide services sets the rates for towing and storage. There is no distinction drawn between services provided to an individual motorist or the defendant or between services provided to a valuable car or a worthless vehicle. Only one paragraph in the entire letter addresses the situation where the owner of a vehicle is absent. That provision permits claimant to retain the vehicle until accrued charges are paid. Clearly defendant, by its own letter, intended for claimant to be paid for towing and storage.
The same intent, i.e., that the garage operator be compensated for towing and/or storage, is evinced by defendant’s own procedures for handling impounded vehicles. In those instances where a vehicle has number plates affixed or has a wholesale value in excess of $250,* the garage operator is entitled to obtain towing and storage charges. Even when a vehicle is unclaimed and is purchased by a garage operator, *6 the operator may recoup his towing and storage charges. Of the vehicles involved in this claim, 31 had license plates affixed and are therefore subject to the foregoing provisions.
The argument that the owner of the vehicle and not the Thruway Authority is responsible to the garage operator for towing and storage is inconsistent with the statute which enables the defendant to dispose of abandoned vehicles. Vehicle and Traffic Law § 1224 (9) provides that the last owner of an abandoned vehicle shall be liable to the local authority for the costs of removal and storage of such vehicle. If a local authority is entitled to recover towing and storage charges from an owner, it is obvious that the local authority was expected to incur those charges upon taking custody of a vehicle. The Thruway Authority, specifically included among those local authorities entitled to take custody of an abandoned vehicle (Vehicle and Traffic Law § 1224 [4]), cannot argue that it is exempt from paying a garage operator it engages to remove a vehicle from the Thruway. We note further that the defendant is charged with the operation and maintenance of the Thruway at its own expense (Public Authorities Law § 360). Removing abandoned vehicles is certainly an operating and maintenance function.
The defendant cannot avoid paying for the services it solicits and receives. As custodian of an unclaimed or abandoned vehicle the local authority is responsible for the costs involved in the removal and storage of the vehicle (1987 Opns Atty Gen 87-23).
Our determination that a local authority is obligated to a garage operator for towing and storage of vehicles taken pursuant to the Authority’s direction does not however lead us to conclude that claimant is entitled to money damages on the facts presented.
We believe that claimant accepted title to the abandoned vehicles in full satisfaction of its outstanding charges for towing and storage. This conclusion is consistent with the actions of the parties and the defendant’s procedures for handling impounded vehicles.
Where an impounded vehicle has no number plates and is below $750, title to the vehicle vests immediately with the local authority having jurisdiction (Vehicle and Traffic Law § 1224 [2]). It further appears that defendant determined the vehicles were not suitable for operation and the transfer of ownership to claimant was pursuant to Vehicle and Traffic Law § 1224 (5) (b) which requires defendant to sell the vehicle *7 to a dismantler or scrap processor. Defendant’s written procedures for these vehicles provides that the title is to be transferred to the garage operator without charge and the toll remains unpaid.
For those vehicles with number plates or a value in excess of $750, the defendant was obligated and did attempt to ascertain the last owner (Vehicle and Traffic Law § 1224 [3]). When the vehicle was not claimed within 10 days, title vested with defendant (Vehicle and Traffic Law § 1224 [3] [c]). If defendant determines the vehicles are not suitable for operation it then disposes of the vehicles in the same manner as set forth above (Vehicle and Traffic Law § 1224 [5] [b]). From the facts presented we conclude that defendant gave the vehicles to claimant with the intent of satisfying the charges for towing and storage and that claimant knowingly accepted title to the vehicles in lieu of payment for those charges. In this manner the defendant satisfied its obligation of negotiating a price to cover all costs incurred.
We can infer from the facts and circumstances that the transfer of title was the payment for services rendered (Jemzura v Jemzura, 36 NY2d 496, supra). For almost a year claimant accepted title to those vehicles without ever demanding payment for towing and storage. It only sought payment after the agreement permitting it to provide services on the Thruway was canceled. Prior to that time it had communicated with defendant on a number of occasions and never raised the question of payment. Claimant acknowledged that had it continued to service disabled vehicles, it never would have sought payment. Claimant attempts to explain this failure to demand payment by saying it feared cancellation of its permit.
While we do not believe that claimant was obligated to or intended to provide towing and storage to the defendant without compensation, it is obvious that claimant never expected payment in addition to title to the abandoned vehicles. We cannot accept claimant’s explanation for the failure to seek payment. Even if claimant did not know that defendant transferred title in full satisfaction of the charges, it could have made inquiry in an informal and nondemanding manner without jeopardizing its permit. We also believe that defendant’s practice of transferring title of abandoned vehicles in *8 lieu of payment was common knowledge among the other tow operators and claimant could easily have asked them without risking a revocation of its permit.
Based upon the foregoing we find that claimant has established an implied contract with defendant entitling claimant to compensation for those services it provided to defendant. We further conclude that defendant has established that claimant was fully compensated for the services rendered when it was given and it accepted title to the abandoned vehicles. Claimant is therefore not entitled to any additional damages.
Accordingly, the motion made by the defendant at the close of trial to dismiss the claim on its merits is granted, and the claim is dismissed.

 Although the exhibit reads $250, this value is now $750 (Vehicle and Traffic Law § 1224 [2]).