J-A15016-17 & J-A15017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF JAMES CAPORUSSO, A/K/A JAMES SALVATORE CAPORUSSO, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: FRANCIS CAPORUSSO AND CHRISTINA CAPORUSSO TREITZ | No. 1267 MDA 2016 |

Appeal from the Order Entered June 30, 2016
In the Court of Common Pleas of Lackawanna County
Orphans' Court Division at No(s): 35-12-0025

| | |
|---|---|
| IN RE: ESTATE OF TRUDY CAPORUSSO, A/K/A TRYNTJE CAPORUSSO | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: FRANCIS CAPORUSSO AND CHRISTINA CAPORUSSO TREITZ | No. 1268 MDA 2016 |

Appeal from the Order Entered June 30, 2016
In the Court of Common Pleas of Lackawanna County
Orphans' Court Division at No(s): 258-OCD-2009
35-09-00258

| | |
|---|---|
| IN RE: ESTATE OF CAPORUSSO, T. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: CAPMAR REALTY CORP., GRUMA REALTY CORP., CAPIT REALTY CO., INC., AND FRANKMAR REALTY CORP. | |

J-A15016-17 & J-A15017-17

|  | No. 1269 MDA 2016 |

Appeal from the Order Entered June 30, 2016
In the Court of Common Pleas of Lackawanna County
Orphans' Court Division at No(s): 35-09-00258

| IN RE: ESTATE OF CAPORUSSO, J. | IN THE SUPERIOR COURT OF PENNSYLVANIA |

| APPEAL OF: CAPMAR REALTY CORP., GRUMA REALTY CORP., CAPIT REALTY CO., INC., AND FRANKMAR REALTY CORP. | |

|  | No. 1270 MDA 2016 |

Appeal from the Order Entered June 30, 2016
In the Court of Common Pleas of Lackawanna County,
Orphans' Court Division at No(s): 35-12-0025

BEFORE: PANELLA, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY SOLANO, J.:　　　　　**FILED DECEMBER 27, 2017**

We address the appeals filed by Francis Caporusso and Christina Caporusso Treitz, docketed at Nos. 1267 & 1268 MDA 2016, and the appeals filed by Capmar Realty Corp., Gruma Realty Corp., Capit Realty Co., Inc., and Frankmar Realty Corp. (the "Corporations"), docketed at Nos. 1269 & 1270 MDA 2016, from the order granting a petition to disallow the Corporations' claims against the estates of James S. and Trudy Caporusso. We vacate, and remand for proceedings consistent with this memorandum.

Trudy Caporusso and James S. Caporusso ("Decedents") died in 2009 and 2011, respectively. At the time of their deaths, the Decedents owned

- 2 -

shares of stock in Capmar, Gruma, Capit, and Frankmar, each of which is a closely-held New York corporation of which James S. Caporusso had been the president. The three adult children of the Decedents — James F. Caporusso, Francis Caporusso, and Christina Caporusso Trietz — were also shareholders and officers in the Corporations[1]; Christina Caporusso Trietz was the Treasurer.[2]

To a large extent, this is a dispute among the Caporosso family members. On one side are Francis and Christina, who are aligned with the four Corporations. They contend that James F. improperly borrowed money from the Corporations and never repaid it, and that the Corporations should be able to collect the unpaid debt from the estates of Trudy and James S. because the Decedents signed a Guaranty pledging to repay the debt. On the other side are the two estates, through their Administrator, Robert T. Kelly, Jr. ("Administrator"), who denies an obligation to pay the debt. Aligned with Administrator is James F., who admits borrowing the money, but denies any obligation to repay it or to have it repaid by the estates.[3]

---

[1] It appears that the Corporations' other shareholders included members of the extended Caporusso family.

[2] For ease of reference, we sometimes refer to the Caporusso family members in the remainder of this memorandum by their first names. James F. Caporusso is variously referenced in the record as "James F. Caporusso," "James F. Caporusso, Jr.," and "James S. Caporusso, Jr."; we refer to him as "James F." and to his father as Decedent or "James S."

[3] No party has contested the three Caporusso siblings' standing to participate in this litigation.

On January 18, 2013, the Corporations filed Notices of Claim against each of the estates, seeking to recover "for an obligation of the [Decedents] as set forth on a Guaranty and Pledge Agreement dated January 1, 2007." In February 2013, the Corporations also filed a civil complaint against the estates (through their executor).[4] The Corporations argued that (1) between 1997 and 2000, the Corporations loaned a total of $1,750,000 to James F. and to his wholly owned business entities, including Pocono Brewing Company and Caporusso Investment Group; (2) these loans had been guaranteed by the Decedents in a Guaranty and Pledge Agreement executed on January 1, 2007; and (3) the loans had never been repaid. The Corporations claimed that the Decedents breached the Guaranty and Pledge Agreement made with the Corporations. Their complaint requested an order requiring specific performance of the Guaranty and Pledge Agreement by each estate.

Attached to both the Notices of Claim and civil complaint were copies of the Guaranty and Pledge Agreement, dated January 1, 2007. After identifying the Decedents and Corporations as parties to the Agreement, the Agreement sets forth the following recitals:

---

[4] The contract action was docketed in the Court of Common Pleas of Lackawanna County at No. 2013-civ-860. That action is not before us in this appeal, but its claims substantially duplicate those in the orphans' court appeals that are before us.

**WHEREAS**, James [F.] Caporusso, Jr.[5] and/or his wholly owned corporations, Caporusso Investment Group and Pocono Brewing Corp. (collectively, "Obligor") have taken loans from each of the Corporations dating back to 1997 on various dates and in differing amounts (collectively the "Loans"); and

**WHEREAS**, the Obligor has not previously paid any interest on the Loans and has not repaid any of the outstanding principal of the Loans; and

**WHEREAS**, the Obligor has not entered into an agreement with any of the Corporations or signed any Promissory Note to repay the Loans, nor has it signed any form of security agreement to secure the repayment of the outstanding Loans; and

**WHEREAS**, it is agreed among the Guarantors and the Corporations for the purpose of this Agreement only, and without prejudice to any future accounting, that as of December 31, 2006 (assuming that there are no repayments before that date) the Obligor owes the following amounts to each of the Corporations:

> To Capmar, the sum of $335,000;
> To Gruma, the sum of $240,000;
> To Capit, the sum of $440,000;
> To Frankmar, the sum of $735,000;

(such amounts hereinafter collectively referred to as the "Obligations" and each individually an "Obligation"); and

**WHEREAS**, James [F.] Caporusso, Jr. disputes that any monies paid to the Obligor were loans, does not believe that the Obligations are required to be repaid to the [Corporations] and refuses to enter into any agreement with the [Corporations] to secure or repay any of the Obligations; and

**WHEREAS**, Guarantors acknowledge that it is in their desire that the Obligations be repaid to the [Corporations] and

---

5 The Guaranty names "James S. Caporusso, Jr.," but the parties agree that this is a reference to James F. Caporusso, and, to avoid confusion, we have corrected the middle initial in quotations from the Guaranty and related documents.

Guarantors therefore wish to guaranty payment of the Obligations by Obligor as set forth in this Guaranty; and

**WHEREAS**, the Obligations are presently due and payable, but [Corporations] have agreed to forebear in respect of collecting the Obligations, as more fully set forth in this Guaranty and Pledge Agreement; and

**NOW**, **THEREFORE**, in consideration of the foregoing recitals and for other good and valuable consideration, Guarantors agree as follows . . .

Guaranty and Pledge Agreement, 1-2.

The Guaranty then provides that a portion of the Decedents' stock in the Corporations will be transferred to Iven R. Taub, Esq. (the "Escrow Agent") as security for "the timely payment of all obligations," and pledges that the transferred stock shall be used to satisfy any remaining balance on the obligations "[i]f all or any part of the Obligations remain unpaid on the date that is nine (9) months after the date of the death of the last surviving [Decedent]." *Id.* at 2-7.[6] The Guaranty also states that it shall be "governed by and construed in accordance with the internal laws of the State of New York." *Id.* at 6. Page 7 of the Guaranty displays the signatures of Decedents; Salvatore Caporusso, another family member, who signed as Vice President of each of the Corporations; and Attorney Taub. Page 8 includes a notarization by Attorney Taub, which states that on November 13, 2007, the Decedents acknowledged that they executed the "within

---

[6] The terms of the Guaranty provide for the accumulation of interest and a method for the valuation of the stock. The Guaranty states that stock in excess of the outstanding obligations shall be returned to the Decedents' estates.

instrument." The signature of Salvatore Caporusso was not notarized. The Guaranty's pagination (*e.g.*, "Page 1 of 9") indicates that it is nine pages in length, but only the first eight pages of the Guaranty were attached to the Notices and complaint.

The Corporations also attached copies of Decedents' wills to their complaint. In relevant part, James S. Caporusso's will, dated April 22, 2010, provided as follows:

> I devise and bequeath to each of my daughter, CHRISTINA, and my son, FRANCIS, a sum equal to the value of all of my shares that I may own in Capmar Realty Corp., Gruma Realty Corp., Capit Realty Co., Inc., and Frankmar Realty Corporation, (individually the "Corporation" or collectively the "Corporations") which were pledged and used to satisfy certain obligations of my son, JAMES, to the Corporations which I guaranteed the repayment of pursuant to a certain Guaranty and Pledge Agreement dated December 6, 2006 entered into among myself, my late wife, TRUDY CAPORUSSO (hereinafter "TRUDY") and each of the Corporations (the "Agreement"). My Executors shalt attempt to satisfy this specific bequest by distributing to CHRISTINA and FRANCIS the same number of shares in each of the Corporations as was used to satisfy the obligations guaranteed under the Agreement.

James S. Caporusso's Will at Art. III, ¶ A. Trudy Caporusso's will contained a materially identical provision, except that it referenced her husband, James S., as the other party to the Guaranty. Trudy Caporusso's Will, Dec. 6, 2006, at Art. III, ¶ B.

In April 2013, James F. served interrogatories on the Corporations, seeking any and all documentation supporting the existence of the loans. After the Corporations objected, James F. filed a motion to compel, which

was granted by an order dated August 27, 2013.[7] On October 9, 2013, the Corporations provided amended responses to interrogatories, including copies of checks made to James F.'s wholly-owned corporations. The checks were signed by Christina, and many have the word "Loan" written in the memo line.

In December 2014, Robert T. Kelly Jr., Esq. was appointed as the estates' Administrator.[8] On November 24, 2015, the Administrator filed a petition to disallow the Corporations' claims.[9] First, the Administrator argued that the Corporations had not proven the validity of the claims because of facial irregularities in the Guaranty, pointing out that the wills reference a Guaranty dated December 6, 2006, while the document produced by the Corporations is dated January 1, 2007 and notarized November 13, 2007, and that only eight of the nine pages of the Guaranty had been provided.

---

[7] The order was clarified by a further order of the court on September 9, 2013.

[8] Francis was the initial executor of Decedents' estates. In August 2013, the orphans' court removed Francis as executor of the estate for Trudy. Francis appealed that decision, and this Court affirmed. **In re Caporusso**, No. 1751 MDA 2013, 2014 WL 10803083, at *1-*2 (Pa. Super., Aug. 19, 2014) (unpublished memorandum). Francis then voluntarily relinquished his position with respect to the estate of James S.

[9] Before Orphans' Court Rule 7.3 became effective in 2016, the Orphans' Court Rules made no specific provision for a motion for summary judgment. The Administrator's petition was the equivalent of such a motion, as it explicitly invoked Pa.R.C.P. 1035.2, stated the standard of review for summary judgment, and requested entry of judgment. **See** Administrator's Pet. for a Rule to Show Cause Whether Claims Against the Estates Should Be Disallowed, 5/24/15, at 1, 15, 32. In this memorandum, we sometimes refer to the petition as a summary judgment motion.

Second, the Administrator argued that the Guaranty lacked consideration, as at the time it had been signed (either in 2006 or 2007), the four-year statute of limitations applicable to collections on the 1997-2000 loans had expired.[10] Third, the Administrator preemptively argued that the Guaranty could not provide a basis to bypass the statute of limitations and revive the obligation because it was not signed by James F. as the debtor. On December 7, 2015, James F. joined the Administrator's petition, and on December 10, 2015, James F. filed a motion for summary judgment that raised similar arguments.

Francis and Christina filed an answer on December 31, 2015. They argued that the Corporations' claims did not depend on the validity of the Guaranty, because "the wills of the Decedents demonstrate the [Decedents'] intent to have the Corporations be compensated." Answer, 12/30/15, at ¶ 15. They also argued that the Guaranty was enforceable as a stand-alone contract, irrespective of the wills or the intent of the Decedents. Francis and Christina further argued that the Guaranty was valid under New York law,

_____

[10] The Administrator argued that the applicable statutes of limitation on the collection of the loans would be four years under Pennsylvania law (citing 42 Pa.C.S. § 5525(a)(3)), and six years under New York law (citing N.Y. CPLR 213), and that the court should apply Pennsylvania's statute of limitations pursuant to 42 Pa.C.S. § 5521, which states, "The period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim." No party has argued that a different statute of limitations should be applied to this case.

despite the expiration of the statute of limitations on the loans, because it had been signed by the Decedents. *Id.* at 32.

Francis and Christina attached to their answer a copy of an unsigned Guaranty and Pledge Agreement dated December 6, 2006. Answer, 12/30/15, at Ex. B. This document appears to be identical to the Guaranty dated January 1, 2007, except that it includes a ninth page that contains a schedule of the amount of shares to be pledged to each Corporation. Each valuation on page 9 references the obligation "As of December 31, 2006," as do the amounts listed on the first page of the document. Francis and Christina argued that, although the document was drafted on December 6, 2006, it contemplated the obligation and relevant shares through December 31, 2006, which is why it was re-dated and executed the following day, on January 1, 2007.

Francis and Christina also attached a summary of a December 6, 2006 meeting of the Corporations (which was prepared on November 8, 2007, by Attorney Taub), which, they claimed, "describes the intention of the [Decedents] to guarantee certain sums to the Corporations, as well as the [Decedents'] intent to execute a Guaranty and Pledge Agreement." Answer, 12/30/15, at ¶ 15. The summary, which was addressed to the directors of the Corporations, states:

> During the meeting we discussed the various loans which had been forwarded to James [F.] Caporusso, Jr. from each of the Corporations in the collective sum of approximately $1,375,000. The collective outstanding balance of these loans with accrued interest as of December 31, 2006 totals $1,750,000. Under the

terms of the Guaranty and Pledge Agreement to be executed by Jim and Trudy Caporusso, they have agreed to guarantee the repayment of the outstanding loans plus accruing interest. They will pledge the appropriate amount of shares in each of the Corporations to guarantee the repayment of the outstanding loans. Schedule A attached to the Guaranty and Pledge Agreement lists the number of shares of each Corporation pledged including the calculation of the appropriate amount of shares to be pledged. Under the terms of the Agreement, if the outstanding loans, including accrued interest, have not been paid in full within three (3) years after the death of the survivor of Jim and Trudy to allow sufficient time for the Internal Revenue Service to conduct an estate tax audit of the estate of the survivor, pledged shares valued in an amount equal to the amount of the outstanding loan shall be forfeited to the respective Corporations. This forfeiture of shares will serve, in essence, to repay the shareholders because it will increase their respective interests in each of the Corporations.

Francis and Christina supplemented their Answer with the affidavit of Salvatore Caporusso, who stated that he is an officer of the Corporations and became aware of the payments made to James F. in 2005. Salvatore understood at that time that the payments were made as loans, but that James F. "had never intended to repay the [C]orporations and . . . had taken the monies from the [C]orporations under false pretenses." Aff. at ¶ 6. Christina and Francis argue that this affidavit, in addition to minutes of a shareholder meeting in 2012 (attached to a prior pleading in relation to Francis' removal as Administrator), evidenced that the first time the Corporations discussed the payments and a guaranty was at the December 6, 2006 meeting.

The Corporations responded to the Administrator's petition on March 18, 2016. The Corporations asserted that the statute of limitations

governing the collection of loans was irrelevant to their claims, because their claims were "founded on an unlawful taking of monies from the Corporations by James F. Caporusso . . . without the authority or knowledge of the Corporations." Corporations' Brief, March 18, 2016, at 2. The Corporations attached to their brief an affidavit by Christina. In it, she stated that she wrote the checks to James F. with the understanding that the monies would be repaid. She acknowledged that she wrote "loans" on the memo lines of the checks and said she did not advise her Father of the payments until 2005. The Corporations argued that because the payments were wrongful takings and not loans, the applicable statute of limitations governing actions to collect the money was tolled until their 2005 discovery by the Corporations. The Corporations also argued that, regardless of the mischaracterization of the payments to James F. as loans, a guaranty under New York state law is not void for want of consideration, even where the statute of limitations on the underlying debt has expired. Corporations' Brief at 5.

The Corporations attached as an exhibit a copy of the Guaranty dated January 1, 2007, that, for the first time, included the Guaranty's ninth page displaying the stock schedule. The Corporations also attached copies of Stock Powers executed on November 13, 2007, in which the Decedents transferred some stock to Attorney Taub with instructions to transfer the stock to the Corporations.

On June 30, 2016, the orphans' court entered judgment in favor of the estates.[11] The court held that the underlying debt became unenforceable when the four-year statute of limitations expired, and that the Guaranty pledging to pay that debt in exchange for a forbearance of legal action was unenforceable on the date it was signed due to lack of consideration:

> In both New York and Pennsylvania, unless a loan agreement otherwise specifies, a debt becomes instantly due. **In re Michael Angelo Corry Inn, Inc.**, 297 B.R. 4[35] (Bankr. W.D. Pa. 2003). Thus, the four year statute of limitations relevant to the enforcement of the debt begins to run from the date the loan is made. 42 Pa. C.S.A. § 5521. The statute of limitations for money advanced on separate dates accrues separately for each advance. **Skiadas v. Terovolas**, 706 N.Y.S. 2d 138 (N.Y. App. Div. 2000). James F. Caporusso never repaid any money to the Corporations. The Guaranty and Pledge Agreement lacks consideration, as the statute of limitations on the alleged loans expired prior to the date of that document. Because the Guaranty and Pledge Agreement acknowledges that there is no actual promissory note to support the loans between the Corporations and James F. Caporusso . . . his subsequent failure to repay any principal or interest on the loans must be deemed to have occurred immediately after receiving the loans[.]
>
> The default on all purported loan checks occurred on various dates approximately fifteen years ago, the latest being September 9, 2000. The obligations of James F. Caporusso . . . were, by law, unenforceable as of the date of the Guaranty, even taking into account the conflicting dates of the Guaranty, which are December 6, 2006, January 7, 2007, and November 13, 2007. . . . The day after the statue has run against liability, obligors "by operation of the statute . . . [are] just as free from liability as though they had on that day paid the amount paid . . . in cash." [**Mutual**] **Life Ins. Co. of** [**New York**] **v.** [**United States**] **Hotel Co.**, 144 N.Y.S. 476, 485 (N.Y. Sup. Ct. 1913).
>
> The consideration for the Guaranty and Pledge Agreement was explicitly the agreed forbearance on collecting on the obligations. The right to collect on the loans had expired as of the date of the

---

[11] The court heard argument on the petition and motion on March 31, 2016.

Guaranty. "The rule is that where the consideration between a principal and a creditor has passed and become executed before the contract of the surety or guarantor is made, and such contract was no[t] part of the inducement to the creation of the original debt, such consideration is not sufficient to sustain such contract." ***Delinsky v. Brodow***, 113 N.Y.S. 7 (1908). Accordingly, the Corporations were not actually forbearing or waiving a legal right, as they did not have a legal right to collect the loans. We agree with the Administrator that the Corporations did not forebear from seeking anything of value and as a result, consideration was absent from the Guaranty and Pledge Agreement. It is not sufficient consideration for an individual or an entity to refrain from collecting a debt that [it] is no longer entitled to collect. The claims made by the Corporations against the Caporusso Estates fail for want of consideration.

Trial Ct. Op., 6/30/16, at 3-5 (unpaginated).

Regarding the facial inconsistencies within the Guaranty, and between

the Wills and Guaranty, the court stated:

[James F. Caporusso] points out that the Corporations bear the burden of proving the validity of the Guaranty and pledge agreement. James F. Caporusso states that the Agreement sued upon is incomplete; that the Wills of the deceased Caporusso parents refer to a Guaranty and Pledge Agreement dated December 6, 2007. On the contrary, the signatures of the deceased Caporusso parents were affixed to a document on November 13, 2007, more than ten months later. The notarization of the Agreement does not identify the document executed. Also, the signature of Salvatore Caporusso, who allegedly signed four times on behalf of the corporations, is not notarized and he is not identified in the notary's narrative. Further, despite this Court's Order of August 27, 2013 directing the Corporations to answer the Request for Production of Documents and Interrogatories, the Corporations have never produced any complete Guaranty and Pledge Agreement executed January 1, 2007, or any such Agreement dated December 6, 2006.

To summarize the point advanced by this moving party, James F. Caporusso maintains that the Corporations have admitted that all of their claims rely solely on a Guaranty and Pledge Agreement that was executed on January 1, 2007, or

perhaps executed on [November 13] of 2007, or possibly executed on December 6, 2006. None of these documents have ever been produced in a complete fashion. Therefore, James F. Caporusso maintains that the Corporations are precluded from offering any substituted document in support of their demands, such as the one attached to the Collection Complaint and Notices of Claim, and these demands must fail.

Trial Ct. Op. at 4-5 (unpaginated). The court then stated:

The Court will not allow the responding parties to cure the date-related facial irregularities by arguing that extrinsic evidence should be utilized to interpret the reference to the 2006 Guaranty in Trudy Caporusso's Will. The extrinsic evidence put forth offers no legal fix to the facial ambiguities. Said evidence is a memorandum authored by Attorney [Iven] R. Taub purporting to be a summary of the "2006 Annual Meeting" of the four Caporusso Corporations . . . and this document offers nothing of substance regarding the intent of the deceased Caporusso parents, individually or together.

*Id.* at 5.

The court concluded its opinion by returning to the inadequate consideration for the Guaranty, stating:

As suit was filed in 2013, more than twelve years after the loan checks were given out, and the statute of limitations had well run by the time suit was filed, the claims against the Estate are time-barred and fail. In the attached Order, we grant the dispositive motions of the Administrator, Robert Kelly, Esq. and heir to the Caporusso parents' Estates, James F. Caporusso.

Trial Ct. Op. at 5 (unpaginated).

The Corporations and Francis and Christina appealed. The Corporations raise four issues:

I. Whether the trial court erred in granting the Administrator's application for dismissal of [the Corporations'] claims and respondent [James F.] Caporusso's motion for summary judgment where there exists material issues of fact pertaining to the [consideration] for the Guaranty on which the

- 15 -

claims are founded, and the nature of the underlying takings upon which the Guaranty is based?

II.    Whether the trial court erred in granting the Administrator's motion for dismissal of [the] Corporations' claims and respondent [James F.] Caporusso's motion for summary judgment on the grounds of latent ambiguities in Decedents' wills or facial irregularities in the [Corporations'] Guaranty?

III.    Whether the law of equitable tolling applies to effect an equitable estoppel against a corporate official who has breached his fiduciary duty to his employer by his wrongful taking and failure to disclose so that he cannot benefit from the operation of the statute of limitations?

IV.    Whether New York law applicable to the Guaranty permits the revival of a debt beyond the expiration of the statute of limitations, and an agreement for the guaranty or security of such a debt does not require consideration?

Corporations' Brief at 4 (capitalization omitted). Francis and Christina

Caporusso argue the following:

1.    The guaranty is an enforceable, valid obligation of the Decedents.

2.    The intentions of [James and Trudy Caporusso] are clear and should be enforced.

Caporussos' Brief at 14, 26.[12]

Our scope and standard of review follow:

Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that

_____

[12] The Caporussos raise four questions in their statement of questions presented, but organize their argument along these two issues.

the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Murphy v. Karnek*, 160 A.3d 850, 857 (Pa. Super. 2017) (citation omitted).

We find the stated issues relating to enforceability of the Guaranty dispositive. The orphans' court held that although the Corporations supposedly had withheld exercise of their right to collect on the debt owed by James F. in exchange for Decedents' guaranty to pay that debt, in fact the Corporations had given up nothing because they had no right to collect on the debt after the statute of limitations expired. Thus, in the orphans' court's view, the Guaranty was void for lack of consideration. The Corporations contend that this holding by the orphans' court was erroneous as a matter of law. Corporation's Brief at 30-39; Corporations' Reply Brief at 1-8. According to the Corporations, "New York law is clear that a prior 'expired' debt obligation may be 'revived' by a third party guarantee because the debt remains valid, even though the right of recovery at law has expired." Corporation's Brief at 31-33 (citing *Johnson v. Albany & S.R. Co.*, 54 N.Y. 416 (1873); *Bernstein v. Allstate Ins. Co.*, 288 N.Y.S.2d 646 (N.Y. Civ. Ct. 1968); *In re Hess*, 404 B.R. 747 (S.D.N.Y. 2009)).[13]

---

[13] Like the Corporations, Francis and Christina argue that the expiration of the statute of limitations on a loan does not extinguish the debt. *See* Caporussos' Brief at 14-26; Caporussos' Reply Brief to Administrator at 1-2.

The orphans' court based its holding on an examination of New York caselaw, but the Corporations rebut the orphans' court's decision with references to New York statutes that were not discussed by the orphans' court and, the Corporations claim, should lead to a different result. In particular, they rely on New York General Obligations Law § 17-101, which provides that a writing can revive a time-barred claim:

> An acknowledgment or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the civil practice law and rules[.]

N.Y. GOL § 17-101. The Corporations argue that in **Banco do Brasil S.A. v. State of Antigua & Barbuda**, 707 N.Y.S.2d 151 (N.Y. App. Div. 2000), the court relied on Section 17-101 to hold "that a guarantor's letter which undertook to promise to pay the plaintiff the amount owed under the underlying loan agreement that was sent after the statute of limitations had run was sufficient to revive the plaintiff's time-barred claims." Corporation's Brief at 34 (citing also **Estate of Vengroski v. Garden Inn**, 495 N.Y.S.2d 200 (N.Y. App. Div. 1985)). The Corporations also argue that Section 17-101 and **Brasil** support their view that a promise to repay a formerly time-barred debt need only be signed by "the party to be charged thereby," which in this case is the Decedents. **Id.** at 37.

The Administrator argues that consideration is necessary to support any guaranty. Administrator's Brief at 25 (citing **Hauswald v. Katz**, 214 N.Y.S. 705 (N.Y. App. Div. 1926), 29 (citing **Mazzella v. Lupinachi**, 333

N.Y.S.2d 775 (N.Y. Civ. Ct. 1972)). Building on this premise, the Administrator contends that forbearance of collection of a time-barred loan is inadequate consideration for the Guaranty at issue. To support this position, the Administrator relies on ***Rogowsky v. McGarry***, 865 N.Y.S.2d 670 (N.Y. App. Div. 2008), in which a party pledged to forbear from asserting a legal right (the contesting of a will) — a right which the court held had no value and could not be deemed consideration. Administrator's Brief at 26-27. The Administrator additionally argues that ***Banco do Brasil*** is inapposite on the subject of consideration because the guaranty in that case was made contemporaneously with the original loan and signed by the guarantor whose admissions later revived the debt; here, on the other hand, Decedents made no written promises at the time of the original loan and received no consideration at that time, and they therefore did not qualify as debtors who could revive the debt. ***Id.*** at 28-29. The Administrator also contends that the Guaranty did not revive the original debt because James F., the original debtor, did not sign it. ***Id.*** at 33.

After careful consideration of the parties' arguments, we conclude that the orphans' court erred in entering summary judgment for the Estates because it is not apparent that "the record clearly shows that . . . the moving party is entitled to judgment as a matter of law." ***Murphy***, 160 A.3d at 857.[14] The arguments presented by the parties demonstrate that the

---

[14] In light of our disposition, we do not address the questions raised by the appellants about the state of the record, which, they contend, contains
*(Footnote Continued Next Page)*

relevant New York statutory and caselaw is complex and contains substantial authority supporting the view that the Corporations may be entitled to relief.

First, we agree with the Corporations that, under New York law, a written promise to pay a debt can revive a time-barred debt, so long as the writing is signed by the party to be charged thereby. *See* New York GOL § 17-101; *Banco do Brasil*, 707 N.Y.S.2d at 152. "The critical determination is whether the acknowledgement imports an intention to pay." *Vengroski*, 495 N.Y.S.2d at 202. In this connection, "The writing, in order to constitute an acknowledgment, must recognize an existing debt and must contain nothing inconsistent with an intention on the part of the debtor to pay it." *Banco do Brasil*, 707 N.Y.S.2d at 152. The Guaranty meets these requirements. In addition, we note that, under New York law, the writing acknowledging the debt can be made either before the expiration of the statute of limitations or, as here, afterwards. *Anonymous v. Anonymous*, 568 N.Y.S.2d 599, 600 (N.Y. App. Div.), *appeal denied* 575 N.Y.S.2d (N.Y. 2001).[15]

---

*(Footnote Continued)* ─────────────────

unresolved factual disputes relating to the content and legitimacy of the Guaranty. These issues remain to be addressed on remand.

[15] In fact, *Mutual Life Ins. Co.*, the case cited by the orphans' court to show that the expiration of the statute of limitations releases a debtor from liability "as though they had on that day paid the amount unpaid . . . in cash," acknowledges that the statute of limitations would not negate the debt, and that the debt could be revived pursuant to the then-active, identically-worded precursor to Section 17-101 and existing caselaw. 144 N.Y.S. at 481.

Here, the Decedents, in writing, acknowledged a debt, and expressed nothing inconsistent with their intent to repay it. The debt therefore became enforceable against them, and the statute of limitations began anew. NY GOL § 17-101. According to the plain terms of the statute, it is **the party to be charged by the promise** that must sign the promise to pay. *Id.* Here, the promise to pay the debt was signed by Decedents, and it is their estates which therefore are liable to pay it. *See Mutual Life Ins. Co.*, 144 N.Y.S. at 481 (indicating that a guarantor could promise to repay a time-barred debt of a third party).

Second, even if New York law requires consideration for a guaranty,[16] that law does not require that there be **new** consideration. A provision of the New York General Obligation Law provides:

> A promise in writing and signed by the promisor or by his agent shall not be denied effect as a valid contractual obligation on the ground that consideration for the promise is past or executed, if the consideration is expressed in the writing and is proved to have been given or performed and would be a valid consideration but for the time when it was given or performed.

_____

[16] In light of our disposition, we need not decide that question. We agree with the Administrator and James F., however, that the Corporations' reliance on Section 3-408 of the New York Commercial Code, which states that "no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind," appears inapt. Section 3-408 addresses consideration "for an instrument or obligation thereon." An instrument must contain an unconditional promise to pay a sum certain in money and be payable on demand or at a definite time. N.Y. U.C.C. § 3-104. Here, the Guaranty provides for the transfer of stock, not a payment of money, and is payable only upon the death of Decedents, an event that would occur at an uncertain time. *See* N.Y. U.C.C. §§ 1-201(b)(24), 3-109.

N.Y. GOL § 5–1105. [17] Under this provision, there was adequate consideration here.

The Appellate Division of the New York Supreme Court recently explained:

> [Section 5–1105] essentially codifies the notion that "[g]enerally, past consideration is no consideration and cannot support an agreement because 'the detriment did not induce the promise.' That is, 'since the detriment had already been incurred, it cannot be said to have been bargained for in exchange for the promise'["] (***Samet v. Binson***, 122 A.D.3d 710, 711 [2d Dept 2014], quoting ***Umscheid v. Simnacher***, 106 A.D.2d 380, 381 [2d Dept 1984]). **However, General Obligations Law § 5–1105 makes an exception where the past consideration is explicitly recited in a writing.** To qualify for the exception, the description of the consideration must not be "vague" or "imprecise," nor may extrinsic evidence be employed to assist in understanding the consideration (***see Clark v. Bank of N.Y.***, 185 A.D.2d 138, 140 [1st Dept 1992], ***appeal withdrawn*** 81 N.Y.2d 760 [1992]).

***Korff v. Corbett***, ___ N.Y.S.3d ___, 2017 WL 4973817, at *3 (N.Y. App. Div., Nov. 2, 2017) (emphasis added). In addition, the consideration for the guaranty need not flow to the guarantor. ***See AXA Inv. Managers UK Ltd. v. Endeavor Capital Mgmt. LLC***, 890 F. Supp. 2d 373, 382 (S.D.N.Y. 2012). [18] Thus, New York courts have consistently held that *past*

---

[17] Although the parties vigorously dispute whether any consideration was required, the trial court's main holding was that there was no valid consideration on these facts, and the parties' caselaw addresses both questions. The New York cases identify Section 5-1105 as part of the matrix of New York law relevant to these issues. ***See Mazzella***, 333 N.Y.S.2d at 777 (case cited by Administrator that addressed past consideration under Section 5-1105 as part of overall discussion of consideration question).

[18] As the court in ***AXA*** explains,

*(Footnote Continued Next Page)*

- 22 -

consideration benefitting a third party is sufficient to support a subsequent guaranty of repayment, provided that that the guaranty satisfies Section 5-1105. *See Lexington Owner LLC v. Kaplowitz*, 53 N.Y.S.3d 35, 36 (N.Y. App. Div. 2017); *Burke v. N. Fork Bank & Tr. Co.*, 644 N.Y.S.2d 293, 293 (N.Y. App. Div. 1996); *Bellevue Builders Supply Inc. v. Audubon Quality Homes Inc.*, 623 N.Y.S.2d 407, 408 (N.Y. App. Div. 1995)[19]; *Hudson Valley Paper Co. v. La Belle*, 571 N.Y.S.2d 107, 109 (N.Y. App. Div. 1991); *Am. Bank & Tr. Co. v. Lichtenstein*, 369 N.Y.S.2d 155, 157-58 (N.Y. App. Div. 1975), *aff'd* 386 N.Y.S.2d 215 (N.Y. 1976).

*(Footnote Continued)* ───────────────────

> it is well established that "where one party agrees with another party that, if such party for a consideration performs a certain act for a third person, he will guarantee payment of the consideration by such person, the act specified is impliedly requested by the guarantor to be performed and, when performed, constitutes a consideration for the guarantee." In other words, the consideration received by the primary obligor also serves as consideration for the guarantor.

*AXA*, 890 F. Supp. 2d at 382 (brackets and citations omitted).

[19] For example, in *Bellevue*, the court held:

> General Obligations Law § 5–1105 provides that if the consideration for a promise expressed in a writing and signed by the promisor is proven to have been given, and would otherwise represent valid consideration for the promise, the mere fact that it is "past or executed" shall not bar enforcement of the contract. In view of the fact that conferral of a benefit upon [the debtor] would have been sufficient consideration for the guarantee had it been given prior to execution thereof, the suggested defense [("that because the stated benefit flowed to [the debtor], as opposed to the individual guarantors, it cannot constitute valid consideration for the guarantee")] is palpably meritless[.]

623 N.Y.S.2d at 408 (citations omitted).

Here, the Decedents stated in writing that the Guaranty was based on the consideration of a large sum of money that was advanced by the Corporations to James F. The fact that the money changed hands well before the Guaranty was executed does not invalidate that consideration under General Obligations Law § 5-1105. As Section 5-1105 provides that past consideration is sufficient to validate a contract even if that past consideration has been "executed" (that is, if, for example, the past consideration is a promise that has been fulfilled), the fact that the statute of limitations has run on enforcement of the past consideration appears to make no difference to the statute's application. Section 5-1105 says that any past consideration suffices, and it does not require the past consideration to have been given prior to a date when the statute of limitations would bar recovery. The parties have cited no authority to the contrary.

Given the provisions in New York law allowing for the revival of a stale debt (by an unequivocal promise in writing), allowing enforceable agreements based on past consideration (described in writing), and allowing enforceable guaranties that do not express consideration for the benefit of the guarantor (in writing), we see no reason why the Decedents (in writing) could not have revived the debt of James F. and promised to pay it, although the claim against James F. individually remains stale. Accordingly, we hold that the orphans' court erred in entering summary judgment for the Estates.

For these reasons, we vacate the order granting summary judgment. Due to our disposition, we need not reach the other arguments presented on

appeal. We remand for proceedings consistent with this memorandum.

Order vacated. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/27/17