Oppenheimer v Machinist (2025 NY Slip Op 52057(U))

[*1]

Oppenheimer v Machinist

2025 NY Slip Op 52057(U)

Decided on December 22, 2025

Supreme Court, Westchester County

Jamieson, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 22, 2025
Supreme Court, Westchester County

Judith Levinson Oppenheimer as Trustee of the Levinson Family Trust, u/a/d January 1, 2002, JOSHUA LEVINSON as Trustee of Levinson Family Trust u/a/d January 1, 2002, ADAM LEVINSON as Trustee of Levinson Family Trust u/a/d January 1, 2002, and NANCY MACHINIST as Trustee of Levinson Family Trust u/a/d January 1, 2002, Plaintiffs,

against
Robert B. Machinist, Defendant.

Index No. 56565/2025

Tannenbaum Helpern et al.
Attorneys for Plaintiffs
900 Third Avenue 
New York, New York 10022 
Trachtenberg & Arena, LLP
Attorneys for Defendant
380 Lexington Avenue, Suite 3300
New York, New York 10168

Linda S. Jamieson, J.

The following papers numbered 1 to 4 were read on this motion:
Paper Number
Notice of Motion, Affirmation and Exhibits 1
Memorandum of Law 2
Memorandum of Law in Opposition 3
Memorandum of Law in Reply 4
Plaintiffs bring their motion seeking to dismiss defendant's three counterclaims. According to the complaint, defendant is a trustee of a trust called the Levinson Family Trust (the "Trust"). Plaintiffs allege that defendant received distributions from various investments he [*2]made on behalf of the Trust using its funds. Rather than deliver those distributions to the Trust, he improperly retained them for his own use and benefit in breach of his fiduciary duty to the Trust. Plaintiffs further allege that after they discovered this misconduct, defendant executed agreements to repay the Trust, including all costs, expenses and professional fees incurred in unwinding his theft. Plaintiffs allege that defendant did not honor those agreements, and instead defaulted in his obligations to repay the Trust. Eventually, plaintiffs commenced this action, alleging claims for breach of contract, breach of fiduciary duty, conversion, unjust enrichment and constructive trust. Plaintiffs allege that defendant owes the Trust at least $1,668,767.98 plus interest, costs, disbursements and attorneys' fees.
The 2002 Levinson Family Trust instrument established the Trust, as well as the parties' rights and responsibilities thereunder. Defendant is both a grantor and a trustee of the Trust (as are plaintiffs). The Trust instrument provides, in relevant part, that "No compensation or Trustee's commissions shall be paid to the Trustees." It further provides that "the Trustees may hold and retain as part of the trust any property received from any source, and invest and reinvest the trust assets (or leave them temporarily uninvested) in any type of property and every kind of investment, in the same manner as a prudent investor would invest his or her own assets." The Trust instrument also provides that "The Trustees may employ such lawyers, accountants and other advisers as the Trustees may deem useful and appropriate for the administration of the trust. The Trustees may employ professional investment advisers in managing the investments of the Trust (including any investment in mutual funds, investment trusts, or managed accounts), delegate to this adviser any discretionary investment authorities, and rely on the adviser's investment recommendations without liability to any beneficiary."
There is no dispute that (1) the parties never entered into any agreement with defendant to provide investment services to the Trust; (2) defendant never billed the Trust for any investment services; and (3) the Trustees never paid defendant for any investment services.
Defendant asserts three counterclaims against plaintiffs, for (1) quantum meruit against the Trust "for the value of the investment advisory and management services that he provided over the course of two decades;" (2) unjust enrichment in the amount of the benefit conferred on plaintiffs by those services; and (3) breach of an implied contract by failing to accurately and timely provide to Machinist an accounting of investment distributions generated by the subject funds, "causing and threatening to cause damage." 
As the Second Department held recently, "On a motion to dismiss pursuant to CPLR 3211(a)(7), the court must accept the facts alleged in the complaint [or counterclaim] as true, afford the plaintiff [or defendant] the benefit of every possible favorable inference, and determine only whether the alleged facts fit within any cognizable legal theory." Kisla v. Jefferson, 237 AD3d 1082, 1083 (2d Dept. 2025). 
The Court begins by examining the claim for quantum meruit. To establish such a claim, a party must show: "(1) the performance of services in good faith, (2) the acceptance of services by the person or persons to whom they are rendered, (3) the expectation of compensation therefor, and (4) the reasonable value of the services rendered." TV Tech Managers, Inc. v. Cohen, 227 AD3d 838, 841, 212 N.Y.S.3d 647, 651 (2d Dept. 2024). In this case, defendant alleges three out of the four criteria. He fails to allege the expectation of compensation for his services, for multiple reasons.
First, the Trust instrument expressly prohibits any compensation to a Trustee ("No compensation or Trustee's commissions shall be paid to the Trustees."), which defendant was, at [*3]all relevant times. Defendant contends that he "is not counterclaiming as a (former) Trustee or seeking compensation for his past service as Trustee. He is seeking compensation for his services as investment advisor and asset manager — services that he provided before as well as after the Trust was formed." However, the Trust instrument makes no exception for Trustees acting in any other capacity when it says "no compensation." It certainly could have provided that any Grantor or Trustee, acting in any capacity other than as a Trustee, may be entitled to compensation.[FN1]
The case on which defendant relies, In re Tuttle's Est., 4 NY2d 159, 167 (1958), does not help him. In that case, there was no trust instrument that provided that trustees were not entitled to compensation; the accountant in question had worked for decedent as an accountant during his life, before he became an executor and trustee; after decedent's death, his widow signed checks for the accountant's services without objection ("It is clear that the widow never objected to any of these payments on any ground.") for some years before she objected; and the parties were not related or otherwise close, unlike here.
Next, the parties' close familial relationship creates a presumption that there would be no compensation. It has long been settled that "a party may not expect compensation for a benefit conferred gratuitously upon another." Umscheid v. Simnacher, 106 AD2d 380, 382—83, 482 N.Y.S.2d 295 (2d Dept. 1984) (allegations support "the conclusion that the services were rendered out of affection and without an expectation of compensation."). Here, defendant himself alleges that "in reliance on his familial relationship with the Plaintiffs," he "provided his services over a 20 year [sic] period, producing stellar investment returns for the Levinson Heirs and forbearing from charging such fees." However, "where parties are related, it is presumed that the services were rendered in consideration of love and affection, without expectation of payment." In re Est. of Naumoff, 301 AD2d 802, 804, 754 N.Y.S.2d 70, 73 (3d Dept. 2003). See also Matter of Est. of Wilson, 178 AD2d 996, 997, 579 N.Y.S.2d 779, 780 (4th Dept. 1991) ("It is incumbent upon the claimant to demonstrate, by clear, convincing and satisfactory evidence, that there was an agreement, express or implied, that the services would be compensated."). This is particularly apt here where the services that defendant rendered benefitted him as well as the other Trustees; his services were not necessarily entirely un-self-interested.
Finally, the Court finds that the parties' "course of dealing" shows that there was no reasonable expectation of compensation. Defendant's allegations demonstrate that the "course of dealing" was that defendant worked without compensation for more than twenty years, never once raising the issue of being compensated, not until his counterclaims. Cf. Zepsa Indus., Inc. v. 401 W. Prop. Owners, LLC, 2025 WL 3520897, at *2 (1st Dept. Dec. 9, 2025) (quantum meruit claim not dismissed where complaint alleges that "through the course of dealings of the parties, defendants "consistently paid the invoices submitted by plaintiff"). The Court thus dismisses the quantum meruit claim.
The unjust enrichment claim fares no better. "The essential inquiry in any action for unjust enrichment is whether it is against equity and good conscience to permit the [party] to [*4]retain what is sought to be recovered." Dragon Inv. Co. II LLC v. Shanahan, 49 AD3d 403, 405, 854 N.Y.S.2d 115, 118 (1st Dept. 2008). In this claim, defendant alleges that plaintiffs [FN2]
"have been unjustly enriched by virtue of Machinist's provision of asset management services respecting the Investment Capital" and that defendant "provided his services over a 20 year [sic] period, producing stellar investment returns for the Levinson Heirs and forbearing from charging such fees, in reliance on his familial relationship with the Plaintiffs." As with the quantum meruit claim, the Trust instrument's express prohibition on compensating the Trustees, coupled with the long course of dealing in which defendant never sought payment from his siblings, requires that the Court dismiss this cause of action. See generally Spada v. Aspen Univ., Inc., 202 AD3d 494, 495, 163 N.Y.S.3d 27, 29 (1st Dept. 2022) ("The unjust enrichment claim was correctly dismissed on the additional ground that the subject matter of the claim is covered" by the relevant document).
The third cause of action seeks damages for implied contract, alleging that "Based on oral and written communications and a course of dealing, an implied contract was formed in or about 2002, between [the parties], pursuant to which, among other things, Machinist provided to [plaintiffs] his services and expertise as an investment professional . . . and [plaintiffs], through their attorney and agent Lawrence S. Blumberg, undertook to receive, collect and synthesize all account statements, transaction confirmations and tax documents relating to the investments, and to issue periodic reports to Machinist's assistant. . . ." This claim alleges that because plaintiffs' agent Blumberg did not issue accurate reports, "Machinist's assistant re-distributed certain investment proceeds to Machinist's personal account," which plaintiffs characterize as thefts. Defendant asserts that in order to repay plaintiffs, pursuant to the parties' October 20, 2022 letter agreement, he will suffer damages by being forced to liquidate investments. Even if there were an implied contract — a finding which the Court cannot make, as set forth below — there is no theory on which plaintiffs can be held liable for defendant's alleged damages since defendant agreed to the terms of the letter agreement. 
Moreover, defendant's allegations of "oral and written communications" are too vague and conclusory to create an implied contract. See Mark Bruce Int'l Inc. v. Blank Rome, LLP, 60 AD3d 550, 551, 876 N.Y.S.2d 19, 20 (1st Dept. 2009) ("The exchange of e-mails, which did not set forth the fee for plaintiff's services or an objective standard to determine it, was too indefinite to be enforceable."); Dominick P. Massa & Sons, Inc. v. State, 147 AD2d 799, 800, 537 N.Y.S.2d 674, 676 (3d Dept. 1989) (conclusory allegations cannot create implied contract). Defendant simply does not allege that there was a meeting of the minds. I.G. Second Generation Partners, L.P. v. Duane Reade, 17 AD3d 206, 208, 793 N.Y.S.2d 379 (1st Dept. 2005) ("For a contract to be implied in fact, there must be proof of a meeting of the minds, which undisputedly did not occur here."). Accordingly, the Court must dismiss the third counterclaim as well.
The Court thus grants the motion to dismiss the counterclaims in its entirety.[FN3]

The foregoing constitutes the decision and order of the Court.
Dated: December 22, 2025
White Plains, New York
HON. LINDA S. JAMIESON
Justice of the Supreme Court

Footnotes

Footnote 1:The instrument does provide that the Trustees may hire "such lawyers, accountants and other advisers as the Trustees may deem useful and appropriate for the administration of the trust." There is, however, no allegation in the complaint that the Trustees employed defendant. 

Footnote 2:Again, this ignores the fact that it was not just plaintiffs who benefitted from the returns that defendant allegedly produced.

Footnote 3:All other arguments raised, and all materials submitted by the parties in connection therewith, have been considered by this Court, notwithstanding the specific absence of reference thereto.